IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SUSAN MARKOSE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03 C 3684 |
| | ) | |
| | ) | Judge Mark Filip |
| ILLINOIS DEPARTMENT OF HUMAN | ) | |
| SERVICES, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Susan Markose ("Markose" or "Plaintiff") brings this action against the Illinois

Department of Human Services ("IDHS" or "Defendant"), her employer, alleging employment

discrimination based on her national origin and retaliation in violation of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* The case is before the Court on Defendant's

Motion for Summary Judgment ("Motion"). (D.E. 20.)[1] For the reasons stated below, the

Motion is granted.

### BACKGROUND[2]

---

[1] The various docket entries in this case are listed as "D.E. ___."

[2] The Court takes the relevant facts from Defendant's Local Rule 56.1(a) Statement of
Uncontested Facts (D.E. 20 ("Def. SF")), from Plaintiff's Local Rule 56.1(a) Statement and
Additional Facts In Opposition to Defendant's Motion for Summary Judgment (D.E. 25 ("Pl.
Resp.") (which encompasses both Plaintiff's responses to Defendant's statements and Plaintiff's
affirmative statements of fact)), and from Defendant's Consolidated Statement of Facts,
Including Response to Plaintiff's Statement of Additional Facts, Pursuant to Local Rule 56.1
(D.E. 30 ("Def. Reply")). Where the parties disagree over relevant facts, the Court sets forth the
competing versions. In addition, the Court, as it must, resolves genuine factual ambiguities in
Plaintiff's favor. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). Where a party
fails to properly support its denial of a statement, and that statement is properly supported in the

Markose, an East-Indian American (*see* D.E. 1 (Compl.) ¶ 2; Pl. Resp. ¶ 136[3]), began

working for IDHS at the Tinley Park Mental Health Center ("TPMHC") as a registered nurse in

1995. (Def. SF ¶ 8; Pl. Resp. ¶ 124.) Her duties included counting narcotics, assessing patients,

administering medication to patients, admitting and discharging patients, assigning tasks to

mental health technicians, and giving reports to incoming staff. (Def. SF ¶ 9.) Markose is a

member of the Illinois Nurses Association, which association had a collective bargaining

agreement with the Illinois Department of Central Management Services from July 1, 2000, to

June 30, 2004, governing its members' salaries and benefits.[4] (Def. SF ¶¶ 29, 30.)

The union agreement covering Markose's salary and benefits includes provisions

regarding vacation requests and grievances. (Def. SF ¶ 31.) If an employee submits a vacation

_____

record, the Court deems it admitted. Local Rule 56.1(a); *see Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000). Additionally, Defendant moves to strike many of Plaintiff's responses to Defendant's statements of facts, as well as numerous additional statements of fact. (*See* D.E. 31.) The Court will address these statements individually in its recitation of facts, as appropriate.

[3] Plaintiff numbered her additional facts consecutive to Defendant's statement of facts. Plaintiff, however, apparently missed Defendant's statement number 122, and she began numbering her own statements with 122. In Defendant's Reply to Plaintiff's additional statements, Defendant renumbered Plaintiff's statements from 123. The Court will use Defendant's numbering in this Order.

[4] Defendant offers evidence from Mike Ally (the Labor Relations and Human Resources manager during the relevant time period) that because Plaintiff is covered by a union contract, there is no relationship between Plaintiff's evaluations and salary increases. (Def. SF ¶¶ 82, 83.) Plaintiff denies this statement, citing to what are apparently general Illinois state personnel regulations which state that performance records in an employee's personnel file shall be considered for purposes of promotion, demotion, and the like. (Pl. Resp. ¶¶ 82, 151; *see also* 80 Ill. Adm. Code § 302.260.) Plaintiff has offered no evidence to contradict Ally's explicit statement that the regulations do not apply to her. (*See* Def. SF, Ex. E (Ally Dep.) at 19:13-19, 20:5-7.) Defendant moves to strike Plaintiff's statement that State regulations draw a relationship between salary and performance. (Def. Reply ¶ 151.) The Court need not resolve this debate because, as explained further below, IDHS is entitled to summary judgment in any event.

2

request before January 31 of a year, the request is decided based on seniority. (Def. SF ¶ 33.) If an employee submits a request after January 31, the request is decided on a first-come-first-served basis. (Def. SF ¶ 34.) Management reserves the right to deny vacation requests based on the operational needs of the facility. (Def. SF ¶ 35.) If an employee does not show up for work on a day for which her vacation request was previously denied, that employee shall receive an unauthorized absence for that day. (Def. SF ¶ 36.) IDHS or TPMHC may put an employee on administrative leave with pay and require an employee to submit to a fitness-for-duty evaluation for making threats or workplace violence. (Def. SF ¶ 37.)

From 1999 to 2000, Donna Tadd was the Clinical Nurse Manager of the unit on which Markose worked. (Def. SF ¶ 13.) Tadd had no authority to hire, fire, demote, promote, transfer, or discipline Markose. (Def. SF ¶ 121.) Tadd's supervisor was Patricia Dal Ponte, Director of Nursing at TPMHC. (Def. SF ¶ 15.) Between 1999 and 2000, the Labor Relations Manager and Human Resources Manager at TPMHC was Michael Ally. (Def. SF ¶ 26.)

In December 1999, Plaintiff worked at the facility during the 11:00 p.m to 7:00 a.m. shift. (Def. SF ¶ 17.) Susan Dozier, an African-American co-worker of Markose, worked the 7:00 a.m. to 3:00 p.m. shift. (Def. SF ¶¶ 10, 11, 17.) Plaintiff was often upset that Dozier was tardy for her shift because Plaintiff could not leave until Dozier got to work. (Def. SF ¶ 18.) Markose and Dozier had an argument on December 13, 1999, because Dozier was late to relieve Plaintiff from duty. (Def. SF ¶ 20.) During this argument, Markose claims that Dozier told her, "You better go back to the country where you came from." (Def. SF ¶¶ 21, 84.) Markose immediately reported this to Tadd. (Def. SF ¶ 86.) Tadd told Plaintiff that in order to discipline Dozier, Plaintiff

3

would have to complain in writing, which Plaintiff did not do at that time.[5]  (Def. SF ¶ 86.)

Some days later, Tadd held a meeting with Markose, Dozier, and Dal Ponte to repair the working

relationship between Dozier and Markose.  (Def. SF ¶ 88; Pl. Resp. 140.)  Dozier reported (at an

unexplained time and place but perhaps during the meeting described below) that she did not tell

Markose to go back to the country she came from, but rather that she told Markose to go back to

the *unit* where she came from at the hospital where they were employed.  (Def. SF ¶ 22.)

On June 3, 2000, Markose wrote a memo to "whom it may concern" complaining about

Dozier.  (Def. SF ¶ 89.)  In addition to other complaints, Markose stated that "one time" Dozier

yelled at her; Markose also described the alleged comment of Dozier about Markose going back

to the country from whence she came.  (Def. SF ¶ 90.)  Plaintiff acknowledges that Dozier never

made any other discriminatory comments to Plaintiff.  (Def. SF ¶ 93.)

On June 12, 2000, Markose had a telephone conference with Steve Hunter of the internal

EEO office and Katie Jackson, the former Director of Nursing, to complain about Dozier's

treatment of Plaintiff.  (Def. SF ¶ 94.)  This was the first and only time that Markose complained

to TPMHC's internal EEO office in writing.  (Def. SF ¶ 95.)  Within two days of this conference,

Tadd called a meeting with Markose, Dozier, Dal Ponte, and Jackson to discuss Markose's

complaints about Dozier.  (Def. SF ¶ 96.)  Markose stated her claims against Dozier, who denied

the allegations, and Markose left the meeting.  (Def. SF ¶ 97.)

Plaintiff claims that the scores and negative comments she received on her next

_____

[5]  Markose attempts to deny this statement by pointing to Markose's written memo of
June 3, 2000, and a subsequent telephone conference that ensued.  (Pl. Resp. ¶ 86.)  She does not
offer evidence, however, that she complained in writing at the time Tadd told her she needed to
do so.

evaluation (signed 1/31/01) were lower than she had previously ever received. (Def. SF ¶ 80.) Plaintiff's performance evaluation indicated that she did not work overtime and had problems getting along with others, including conflicts with her co-workers. (Def. SF ¶ 81.)

On October 26, 2002, Markose submitted a vacation request to Tadd via Tadd's mailbox for time off in December 2002. (Def. SF ¶ 39.) That same day, Markose submitted a vacation request for the same time off to Editha Santos, a Clinical Nurse Manager of another unit, via Santos's mailbox. (Def. SF ¶ 40.) Tadd apparently denied that request on October 30, but Markose never received that denial. (Pl. Resp. ¶ 135.) Markose alleges that Tadd constantly gave her notices in an untimely fashion. (*Id.*) On November 8, 2002, Markose submitted a vacation request for the same December 2002 time off to Dal Ponte (Director of Nursing) via Dal Ponte's mailbox. (Def. SF ¶ 41.) On November 11 or 12, Santos returned Markose's vacation request to her and told her to ask Tadd for time off. (Def. SF ¶ 42.) On that same day, Dal Ponte also told Markose to give her vacation requests to Tadd. (*Id.*) According to Defendant, Tadd denied Plaintiff's vacation requests for time off in December 2002 based on operational needs and because Plaintiff did not submit her requests through the proper channels. (Def. SF ¶¶ 45, 46, 109.) Plaintiff asserts that she was denied vacation time because of her national origin. (Def. SF ¶ 50.) Plaintiff has had other vacation requests granted, and she does not know whether Tadd denied any other nurse's vacation requests in December 2002. (Def. SF ¶ 51, 52.) Plaintiff filed a grievance concerning the denial of her vacation request, but she did not pursue it. (Def. SF ¶¶ 54-58.)

On or about November 21, 2002, Tadd informed Mike Ally that Markose had called Tadd about the denial of Markose's vacation request. (Def. SF ¶ 59.) Tadd informed Ally that

5

Plaintiff was extremely angry and had begun screaming at Tadd, accusing Tadd and Dal Ponte of lying and threatening, "1 will get you, you evil liars." (Def. SF ¶ 60.) Plaintiff denies that she said this to Tadd. (Pl. Resp. ¶¶ 60; 130.) Tadd informed Ally that she was concerned about Plaintiff's mental health. (Def. SF ¶ 61.) On or about November 22, 2002, Markose received a sealed letter informing her that she was to meet with Ally on November 25, 2002. (Def. SF ¶ 62.)

On November 25, Plaintiff attended a meeting with Ally, Tadd, Dal Ponte, and a union representative, Sharon Ostrowski. (Def. SF ¶ 63.) Ally informed Plaintiff that the reason for the meeting was her phone conversation with Tadd. (Def. SF ¶ 64.) Tadd described the conversation she had with Markose, and Markose denied that the conversation occurred as Tadd described. (Def. SF ¶¶ 65, 66.) After the meeting, Ally informed Plaintiff that she was being placed on paid administrative leave—which she was on until approximately one week later, or December 1, 2002. (Def. SF ¶¶ 68, 69.) According to Defendant, Markose was placed on administrative leave for threatening her supervisor. (Def. SF ¶ 111.) Markose denies that this is the reason that she was placed on paid administrative leave, offering her own testimony that she never made such threats. (Pl. Resp. ¶ 111.) This was the only time Plaintiff was placed on administrative leave. (Def. SF ¶ 71.) At this meeting, Ally refused to talk about Markose's vacation request. (Pl. Resp. ¶ 147.)

Markose does not know whether other nurses were placed on administrative leave. (Def. SF ¶¶ 72, 113.) Plaintiff claims that upon her return from paid administrative leave, Tadd deployed her to other units when it was not her turn to be deployed there. (Def. SF ¶ 74; Pl. Resp. 131.) Plaintiff had been deployed to other units before the incident with Tadd. (Def. SF ¶

6

75.)

Markose called in sick on December 10 through 13, 2002, the dates for which her previous vacation request had been denied. (Def. ¶ 76.) On December 10, Plaintiff was placed on unauthorized leave because she called in sick on a day for which her previous request for vacation had been denied. (Def. ¶¶ 77, 109.[6]) On December 11, Markose provided a doctor's statement that covered her absences for December 11 through 13. (Def. SF ¶ 78.) The unauthorized absence for December 10 was later reversed and changed to approved sick time. (Def. ¶¶ 79, 109.)

As previously stated, Markose has been employed at TPMHC since 1995. Markose has never been disciplined during her employment at TPMHC. (Def. SF ¶ 116.) She has never received an oral or written reprimand. (Def. SF ¶¶ 117, 118.) She has never been suspended. (Def. SF ¶ 119.) She has never had her pay reduced for disciplinary reasons, been demoted, or placed on probation. (Def. SF ¶ 120.) Plaintiff was promoted, to the Registered Nurse II position, in January 2004. (Def. SF ¶ 122.) Markose admits that she had no problems with supervisors at TPMHC other than Tadd. (Pl. Resp. ¶ 127.) Markose contends that "Tadd did not treat anyone of any other national origin or race like she treated Plaintiff."[7] (Pl. Resp. ¶ 132.)

---

[6] Plaintiff admits to the statement in paragraph 77 but attempts to deny the statement in paragraph 109, which is substantially identical. Even if the Court did not hold Markose to her initial admission, which it does, her denial is not responsive to the statement, and the Court deems the statement admitted.

[7] Defendant moves to strike this statement on the grounds that it is speculation based on Plaintiff's personal belief. (Def. Reply ¶ 133.) Markose may testify to what she observed, so the Court limits its acceptance of the statement to evidence that Markose did not observe Tadd treat anyone the same as Tadd treated Markose.

Markose filed a Charge of Discrimination with the EEOC on January 6, 2003.[8] (Def. SF, Ex. B.) The Charge complains of alleged misconduct which occurred from, at the "[e]arliest," "11/04/2002," to at the "[l]atest," "12/10/2002." (*Id.*) That Charge states, in its entirety:

> I. I was hired by the above named Respondent [IDHS] in February, 1988 and my current position is Registered Nurse 1. Since October 26, 2002, I have requested vacation time for December of 2002, and it has been denied. On November 25, 2002 until December 2, 2002, I was placed on an administrative leave with pay. I have been harassed by my superiors. On December 10, 2002, I was placed on an unauthorized sick time.
>
> II. I believe that I have been discriminated against on the basis of my national origin, Indian in violation of Title VII of the Civil Rights Act of 1964, as amended.

(*Id.*) When Markose filed her initial charge, she typed up some notes with complaints she had against Tadd, Ally, and Dozier. (Pl. Resp. ¶ 143; Pl. Ex. 5.) Plaintiff does not dispute that her EEOC charge alleged only a claim of national origin discrimination in violation of Title VII. (Def. SF ¶¶ 3; 101-03.)

Markose filed this lawsuit on June 30, 2003, alleging that she was treated differently in her terms and conditions of employment than non-Indian nurses and non-complaining employees and that she was subjected to a hostile work environment based on her national origin. (Compl. ¶ 19.) She complained of treatment by Tadd regarding her complaints as to Dozier, her poor evaluation, her denial of vacation days, and her administrative leave. (Compl. ¶¶ 12-17.)

On summary judgment, Markose offers evidence, in addition to the facts described above, that purportedly supports her case. Markose states that Tadd made her return to her doctor three times to get a doctor's note to excuse her absence. (Pl. Resp. ¶ 133.) Markose states that Dozier

---

[8] Plaintiff states that she filed the charge when she "got no assistance from IDHS." (Pl. Resp. ¶ 142.) Plaintiff's record citation does not support this statement. (*See* Def. Ex. D (Markose Dep.) at 122 (discussing the charge but not why she filed it).)

would continually yell at her (although, other than one disputed statement about "returning to the country that she came from," Markose acknowledges that Dozier never made any discriminatory comments to Markose (Def. SF ¶ 93)), and Markose never heard Dozier yell at anyone else. (Pl. Resp. ¶ 135.) Markose is the only Indian nurse on the unit, although the unit on which Plaintiff and Dozier worked was comprised of white, African-American, Nigerian, Indian, and Filipino nurses. (*Id.*; Def. SF ¶ 12.) Markose also states that despite continually reporting incidents of mistreatment and "daily verbal abuse," Tadd and the other staff "would do nothing about it." (Pl. Resp. ¶ 137.) Defendant denies this by offering undisputed evidence of the meeting Tadd held regarding Markose's complaints against Dozier. (Def. Reply ¶ 137; Def. SF ¶ 97.)

Defendant argues that summary judgment is proper because (1) Markose failed to file an EEOC charge within 300 days of the events of which she complains; (2) the Complaint exceeds the scope of the EEOC charge; (3) Markose has failed to establish a *prima facie* case of national origin discrimination because she cannot establish that she suffered from an adverse employment action or that non-Indian or non-complaining nurses were treated more favorably; (4) Markose has failed to establish that the non-discriminatory reasons offered by IDHS for its actions are pretextual; (5) Markose has failed to establish a *prima facie* case for retaliation; and (6) the actions and events alleged by Markose do not rise to the level of a hostile work environment. For the reasons stated below, the Court finds that Markose may not use incidents outside the 300-day statutory period as the basis for a discrimination or retaliation claim; she has not established that she suffered an adverse employment action; she has not put forward similarly situated employees who were treated better than she; and she has not presented evidence that rises to the level of a hostile work environment. Thus, the Motion is granted, and the Court need not address

Defendant's remaining arguments.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## DISCUSSION

Title VII forbids an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also forbids an employer to "discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge . . . under this subchapter." 42 U.S.C. § 2000e-3(a). Markose alleges that IDHS violated Title VII by discriminating against her because of her national origin and activity protected by Title VII, and by subjecting her to a hostile work

10

environment.

I.       National Origin Discrimination & Retaliation Claims[9]

In order for Markose to prevail on a claim of discrimination based on national origin or

retaliation, she must present evidence of discriminatory intent, whether by direct or

circumstantial evidence, or under the *McDonnell Douglas* burden-shifting framework. Markose

presents no direct evidence of discriminatory intent (*see* Def. SF ¶ 104 (admitted by Markose)),

nor does she offer circumstantial evidence under the direct method. Markose addresses in her

brief only the burden-shifting analysis, so the Court looks to whether she has established a *prima*

---

[9] The Court notes that Markose appears to have abandoned her retaliation claim on
summary judgment by failing to address it in her Response to the Motion. The Court also notes
that Defendant's argument that retaliation is outside the scope of Markose's EEOC charge
appears to have substantial merit. Generally speaking, a plaintiff cannot bring claims in a lawsuit
that were not included in his EEOC charge. *Cheek v. W. and S. Life Ins. Co.*, 31 F.3d 497, 500
(7th Cir. 1994) (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974)). On the face
of the charge, Markose alleges only national origin discrimination (Def. SF ¶¶ 3; *see also id.* 101-
103); nowhere does she mention retaliation. (Def. SF, Ex. B.) While the Seventh Circuit
instructs that a charge encompasses all claims that are "like or reasonably related to the
allegations of the [EEOC] charge and growing out of such allegations," *Cheek*, 31 F.3d at 500,
the Court finds that Markose's retaliation claim cannot reasonably be inferred from her claim of
national origin discrimination, at least as to her complaint that Tadd's evaluations constituted
unlawful retaliation. As stated, Markose does not dispute that her "EEOC charge alleged only a
claim of national origin discrimination in violation of Title VII." (Def. SF ¶¶ 3; *see also id.* 101-
03.) Markose does, however, point to a set of notes which she claims she gave to the EEOC at
the time she filed her charge. (*See* Pl. Resp. ¶ 142; Pl. Ex. 5.) Even if the Court were inclined to
expand the scope of Markose's EEOC charge based on those notes, which would seem to be
inconsistent with the Seventh Circuit's holding in *Novitsky v. American Consulting Engineers*,
196 F.3d 699, 702 (7th Cir. 1999) (EEOC charge rather than intake questionnaire controls scope
of charge), those notes do not help Markose. While Markose discusses Dozier's comment to her,
she does not mention the subsequent evaluations by Tadd, nor does she make any claim that any
of the alleged actions were on account of her complaints about Dozier. Given, however, that the
Court finds that none of Plaintiff's allegations rise to the level of an adverse employment action
and that Plaintiff has not put forth similarly situated comparators, which both are independently
fatal to her retaliation claim and her national origin discrimination claim, the Court will address
the retaliation claim in addition to her discrimination claim.

*facie* case of discrimination and/or retaliation under the indirect method.

To establish a *prima facie* case of discrimination, Markose "must show that she belongs to a protected class, that she was performing up to the employer's legitimate expectations, that she suffered an adverse employment action, and that the employer treated similarly situated employees outside the protected class more favorably." *Mateu-Anderegg v. School Dist. of Whitefish Bay*, 304 F.3d 618, 625 (7th Cir. 2002). To prevail on a retaliation claim without direct evidence, Markose must "show that after filing the charge of discrimination only [s]he, and not any similarly situated employee who did not file a charge, was subjected to an adverse employment action even though [s]he was performing [her] job in a satisfactory manner." *Stone v. City of Indianapolis*, 281 F.3d 640, 644 (7th Cir. 2002). If Markose makes out a *prima facie* case, then the burden shifts to Defendant to provide a legitimate, non-discriminatory reason for its actions. *Stone*, 281 F.3d at 644; *Mateu-Anderegg*, 304 F.3d at 615. If that evidence is unrebutted by Markose or if she fails to raise a triable issue as to whether the offered reasons are pretextual, Defendant is entitled to summary judgment. *Stone*, 281 F.3d at 644; *Mateu-Anderegg*, 304 F.3d at 615.

A.    Incidents Outside 300-day Statutory Period

Defendant argues, first, that Markose improperly relied on events that occurred more than 300 days before she filed her EEOC charge in violation of Title VII. *See* 42 U.S.C. § 2000e-5(e). Markose does not even attempt to respond to this argument. Nor would such a response be availing. Dozier's statement to Markose in October 1999, Markose's complaints immediately following the statement and in June 2000, and the allegedly retaliatory evaluation by Tadd in January 2001, all occurred 2 to 3 years before Markose filed her EEOC charge on January 6,

2003. The Supreme Court teaches that discrete acts of discrimination that occur outside the 300-day statute of limitations period are not actionable. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Thus, to the extent that Markose attempts to premise her claim for retaliation or discrimination on either the statement by Dozier or the evaluation by Tadd, summary judgment for Defendant is proper.[10]

B.      No Adverse Employment Action

In addition, and independent of the aforementioned problems with Markose's apparent attempt to rely on discrete incidents in her discrimination and retaliation claims that occurred more than 300 days before she filed her EEOC charge, Markose also has failed to establish that she suffered an actionable adverse employment action. Although Markose does not specifically identify which actions she believes were taken for improper reasons, as best the Court can ascertain, she argues that the following events or actions constituted adverse employment actions: (1) being told by a co-worker to "go back to the country you came from," as well as being yelled at generally by the same co-worker; (2) receiving lower scores and negative comments on an evaluation after complaining about her co-worker's comment; (3) having her

_____

[10] To the extent that Markose is arguing that the later actions, *e.g.* the denial of vacation time or placement on administrative leave, are retaliation for Markose's complaints about Dozier two years earlier, the Court notes that the extensive break in time between the complaints and the later acts militates strongly against any finding that Markose can make out a *prima facie* case of retaliation, at least under any direct method of proof—because the substantial break in time between any complaints and the allegedly offending conduct fails to establish a reasonable inference of retaliation. *See, e.g., Haywood v. Lucent Technologies*, 323 F.3d 524, 532 (7th Cir. 2003) (one-year gap between plaintiff's termination and her complaint of race discrimination "far too long" to allow a reasonable jury "to infer that her termination was causally related to the filing of her complaint"); *Filipovic v. K & R Express Sys., Inc.*, 176 F.3d 390, 399 (7th Cir. 1999) (four-month gap negates causal inference); *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 511 (7th Cir. 1998) (no inference where plaintiff's termination occurred more than five months after protected expression).

13

vacation request denied; (4) having one of her sick days temporarily labeled an unauthorized absence; (5) being required to get multiple copies of a doctor's note to have her sick time excused; (6) being placed on paid administrative leave for about one week; and (7) being deployed to other units when it was not her turn to be deployed there and when she did not wish to go there. Markose apparently concedes that none of the events she describes individually rises to the level of an adverse employment action, as she argues in her brief only to the collective effect of the actions. (*See* Pl. Resp. Br. at 9 (declining to argue that individual events constitute adverse employment actions and stating, "The actions taken against Plaintiff in this case, taken as a whole, constitute the type of adverse employment action which is protected by Title VII.").) Whether taken individually or in the aggregate, however, the Court finds that they do not constitute an adverse employment action under applicable precedent.

Adverse employment actions include a "broad array of actions such as 'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or some other action causing a significant change in benefits.'" *McKenzie v. Milwaukee County*, 381 F.3d 619, 625 (7th Cir. 2004) (quoting *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761(1998)). "To be actionable, an employment action must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Id.* (quoting *Traylor v. Brown*, 295 F.3d 783, 788 (7th Cir. 2002)). While a "wide variety of actions" can qualify as materially adverse, "not everything that makes an employee unhappy is an actionable adverse action." *Haugerud v. Amery School Dist.*, 259 F.3d 678, 691 (7th Cir. 2001) (internal quotation omitted).

In the retaliation context, the Seventh Circuit instructs that "the range of employer conduct that constitutes an adverse employment action is broad, but not unlimited." *Johnson v.*

14

*Cambridge Indus.*, 325 F.3d 892, 902 (7th Cir. 2003). There are three basic categories of cases where courts have found the criteria for materially adverse employment actions to be met:

> (1) cases in which the employee's compensation, fringe benefits, or other financial terms of employment are diminished, including termination; (2) cases in which a nominally lateral transfer with no change in financial terms significantly reduces the employee's career prospects by preventing her from using her skills and experience, so that the skills are likely to atrophy and her career is likely to be stunted; and (3) cases in which the employee is not moved to a different job or the skill requirements of her present job altered, but the conditions in which she works are changed in a way that subjects her to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in her workplace environment.

*O'Neal v. City of Chicago*, 392 F.3d 909, 911 (7th Cir. 2004). "Retaliatory harassment by co-workers or a supervisor can rise to this level if it is severe enough to cause a significant change in the plaintiff's employment status." *Stutler v. Ill. Dep't of Corr.*, 263 F.3d 698, 703 (7th Cir. 2001) .

None of the actions of which Markose complains can be said to have materially altered her compensation or other financial benefits, her job responsibilities, or her career prospects. Nor can they be said to have altered the conditions of her work environment or her employment status in a significantly negative way. The Court can quickly dispose of Markose's complaint of having to get multiple copies of her doctor's note. This is a mere triviality that does not come close to a materially adverse employment action. *See Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004) (collecting cases); *Stutler*, 263 F.3d at 703 (collecting cases). The statement(s) by Dozier, too, do not qualify, as they were not sufficient as presented to significantly alter Markose's working environment.[11]  *See, e.g., Griffin*, 356 F.3d at 829 (collecting cases,

---

[11] Markose alleges that Dozier made the "go back to the country you came from" statement in October 1999. (Def. SF ¶¶ 21, 84.) As described above, the Court finds that this statement occurred outside the 300-day statutory period. Therefore, to the extent that Markose

including *Grube v. Lau*, 257 F.3d 723, 729 (7th Cir. 2001) (altered work hours, negative performance evaluations, and unfair reprimands not material adverse employment actions)).

Markose alleges that Tadd retaliated against her for complaining about Dozier's comment by giving her a lower performance evaluation. Even if the Court did not find, as described above, that this discrete act falls outside the 300-day statute of limitations, it does not constitute an adverse employment action. As the Seventh Circuit has explained, "[a]s for . . . negative performance evaluations, it is well established that these alone do not constitute an adverse employment action." *Haywood*, 323 F.3d at 532; *accord Grube*, 257 F.3d at 729 ("[A]s the district court properly noted, unfair reprimands or negative performance evaluations, unaccompanied by some tangible job consequence, do not constitute adverse employment actions.").

Moreover, although it certainly is not essential to the Court's holding, the Court notes that the "negative" evaluation of which Markose complains (*see* Def. SF ¶¶ 80-81; Pl. Resp., Ex. 4), is not particularly negative at all. The evaluation of which Markose complains contains only two instances where Tadd rated Markose's performance lower than meeting expectations. In the category "Human Relations: Establishes and maintains cordial work climate, promotes harmony and enthusiasm, displays sincere interest in assisting other employees," Tadd rated Markose as "Needs Improvement." (Pl. Resp., Ex. 4 at Bates No. D00204.) In the category "Communicating with staff in an effective manner," Tadd rated Markose as "Not Meeting Expectations." (*Id.* at Bates No. D00215.) In Tadd's explanation of the latter rating, Tadd

---

seeks to rely on Dozier's statement as a discrete employment action, her argument fails on this independent ground. *See Morgan*, 536 U.S. at 113.

explained, "Ms. Markose has had difficulty [with] some of the T-3 nurses during the past reporting period, and has required the intervention of [supervisors] to resolve the issue. It must also be stated that Ms. Markose cannot be viewed necessarily at fault in this matter, but was unable to resolve the issue [without] intervention of supervisors." (*Id.* at Bates No. D00216.) This is hardly a "negative" evaluation. Overall, Tadd gave Markose a rating of "Meets Expectations." (*Id.* at Bates No. D00220.) In three categories, Tadd even rated Markose higher than she rated herself. (*See id.* at Bates No. D00204 (use of time), D00211 (demonstrating self-motivation), D00212 (assuming responsibility beyond assigned shift).) Indeed, Markose gave herself mostly average marks in the self-assessment sections—and in the vast majority of instances, those assessments were mirrored by Tadd. It is difficult to see any fair-minded review of the performance evaluation that could lead one to reasonably conclude either that Tadd's overall assessment of Markose materially differed from Markose's assessment of herself, or that the evaluation was pejorative or negative.

In any event, taking the evaluation with Markose's admission that she has not received any kind of material decline in her salary or responsibilities (*see* Def. SF ¶¶ 116-120), the Court finds that the allegedly negative evaluation does not constitute an adverse job action. *See, e.g., Rabinovitz v. Pena*, 89 F.3d 482, 488-89 (7th Cir. 1996) (lower performance rating that did not alter plaintiff's responsibilities or salary not adverse employment action); *Smart v. Ball State Univ.*, 89 F.3d 437, 442 (7th Cir. 1996) (negative performance evaluations alone not actionable adverse employment action). Even assuming that Markose is correct that IDHS *could* make its salary and promotion decisions based on these evaluations rather than on the basis of the union contract alone, there is no evidence by Markose that IDHS has done so. (Indeed, Markose does

17

not dispute that she has since been promoted by the IDHS. (Def. SF ¶ 122.)) Without such negative consequences, these evaluations have not altered the terms or conditions of her employment so as to constitute an adverse employment action.

Markose offers no authority for the notion that a denial of vacation days or having one's sick time temporarily labeled as an unauthorized absence is materially adverse for Title VII purposes. The authority cited by Defendant, however, supports the commonsense finding that these actions are not adverse employment actions. *See Campbell v. Henderson*, No. 00 C 6837, 2002 WL 1732361, at *7 (N.D. Ill. July 26, 2002) (Pallmeyer, J.) (rescission of disciplinary actions leading to retroactive approval of employee's leave does not constitute materially adverse employment action); *id.* at *8 (three denials of annual leave do not constitute adverse employment action) (citing *Rice v. Central DuPage Hosp.*, No. 96 C 2405, 1999 WL 199241 (N.D. Ill. Mar. 31, 1999) (Nordberg, J.)); *see also Griffin*, 356 F.3d at 829 (refusal to approve annual leave requests when work was backlogged does not constitute adverse employment action); *Bottoms v. Ill. Dep't of Human Servs.*, 174 F. Supp. 2d 758, 766 (N.D. Ill. 2001) (Conlon, J.) (plaintiff's receipt of unauthorized absence that later was resolved, and plaintiff's lost but restored leave credits, do not constitute material adverse employment actions). Like the plaintiff in *Campbell v. Henderson*, Markose is not suggesting that Defendant routinely denied her requests; indeed Markose just complains concerning the few days in December 2002 for which she was denied. *See Campbell*, 2002 WL 17332361, at *8 ("[T]his court is not persuaded that even three denials would constitute a material loss of benefits."); *Rice*, 1999 WL 199241, at *5 ("Rice presents no evidence that subsequent vacation requests were denied; the denial of a single request does not rise to the level of a material loss of benefits.").

18

Markose also offers her paid administrative leave as a potentially adverse employment action, again without offering any authority or argument in her summary judgment papers. In light of the short duration of the paid administrative leave (one week) and the fact that Markose has not identified *any* financial or other career-related detriment caused by the brief paid leave (she has since been promoted), the Court finds that this, too, does not rise to the level of a materially adverse employment action. *Compare Watkins v. Henderson*, No. IP99-1945-C-B/S, 2001 WL 219807, at *11-*12 (S.D. Ind. March 5, 2001) (Barker, J.) (placement on forced paid administrative leave for some five months possibly an adverse employment action because of concomitant loss of eligibility for certain benefits); *Flanagan v. Reno*, 101 F. Supp. 2d 1022, 1026 n.2 (N.D. Ill. 2000) (declining to address whether administrative leave with pay constituted an adverse action because plaintiff waived the issue, but stating, in dicta, that "[a] *long term* administrative leave, which would deprive an employee of work, any chance to advance, and other benefits, probably could constitute adverse employment action.") (emphasis added).

The fact that Markose was deployed to other units apart from what is presumably her "regular" unit does not constitute an adverse employment action. Markose has not offered any evidence to suggest that being deployed to some other unit is an objectively inferior job; nor does she allege that this deployment has deprived her of skills for which she is trained. *See O'Neal*, 392 F.3d at 913 ("'[B]eing shifted to an essentially equivalent job that an employee does not happen to like as much does not a Title VII claim create.'")(quoting *Place v. Abbott Labs.*, 215 F.3d 803, 810 (7th Cir. 2000) (alteration omitted)). Rather, what Markose has expressed, as best the court can tell, is a subjective preference for one position over the other. (Indeed, she does not even attempt to explain the basis of that preference.) The Seventh Circuit has repeatedly

19

instructed that a "purely subjective preference for one position over another . . . does not justify trundling out the heavy artillery of federal antidiscrimination law." *Id.* (internal quotation omitted).

Markose points to *Phillips v. Collings*, 256 F.3d 843 (8th Cir. 2001), as her sole source of authority for arguing that her complaints constitute an adverse employment action. She argues that the sum total of Tadd's and Dozier's actions constitute a Title VII violation. Defendant notes that Phillips is obviously not a Seventh Circuit case and implicitly suggests that it is questionable on that basis.

The Court need not evaluate whether *Phillips* is in implicit conflict with other Seventh Circuit caselaw, because even if *Phillips* fully applies on its own terms, it deals with a materially different factual scenario than any presented here. The cumulative effect of the actions in *Collings* is significantly greater than any in this case. In *Collings*, the plaintiff's supervisor recommended that an employee be terminated in part because of his religious beliefs. 256 F.3d at 848. When the supervisor could not get approval for the termination, she created a 53-page, highly critical evaluation that "castigated every aspect of [the plaintiff's] work performance, imposed remedial training, corrective action plans, and was part of [his] personnel file." *Id.* Faced with this growing conflict with his supervisor, the plaintiff then transferred to another office. *Id.* at 849. The Eighth Circuit held that the jury reasonably found that the initial recommendation and subsequent evaluation together constituted an adverse employment action where "the record clearly reveal[ed] that [the supervisor], who could not unilaterally terminate [the plaintiff], nor deny his transfer, did everything she could to disrupt his employment." *Id.* In contrast to the *Phillips* plaintiff whose work environment was affected to the point he sought a

transfer, Markose complains of being sent to a unit *other* than where Tadd and Dozier worked, evidencing the moderate nature of her environment. Markose's combined allegations of limited discipline, denial of vacation time, deployment to other units, and a single derogatory comment[12] are not severe enough to rise to the level of an adverse employment action. *Compare Knox v. Indiana*, 93 F.3d 1327, 1331, 1334-35 (7th Cir. 1996) (upholding a jury verdict in favor of a plaintiff whose co-workers engaged in a "relentless campaign of fellow employee harassment" intended to make the her life "hell"). Thus, summary judgment is appropriate. *Accord Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 466 (7th Cir. 2002) (dismissing retaliation and discrimination claims where no material adverse employment action shown).

C.    No Evidence of Similarly Situated Employees

Even if Markose's complaints rose to the level of an adverse employment action, her retaliation and discrimination claims would independently fail because she has not presented sufficient evidence that other, similarly situated employees who did not complain or who are non-Indian were treated differently than she was treated. Markose's entire argument as to the similarly-situated prong states:

> No other employee other than Plaintiff was allowed to be told she must go back to her country; had false allegations of a threat to kill someone entered in her personnel records; had hidden unauthorized absences put in her personnel records; was refused authorized

---

[12]  Markose also alleges that Dozier "would continually yell at Plaintiff." (Pl. Resp. ¶ 135.) Such "conclusory statements, not grounded in specific facts, are not sufficient to avoid summary judgment." *Lucas v. Chicago Transit Auth.*, 367 F.3d 714, 726 (7th Cir. 2004) (citing *Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001)) (upholding district court's motion to strike conclusory allegations that racial slurs were commonly used in the workplace, where plaintiff did not specify time or place of actions ); *id.* ("[W]ithout specific instances of support, we cannot consider [plaintiff's] assertions in support of his hostile work environment claim."). The Court also notes that Markose concedes that any other purported yelling by Dozier did not involve discriminatory comments. (Def. SF ¶ 93.)

time-off even when presenting doctor's records and had daily reports of harassment by co-workers ignored by her supervisor. Clearly Plaintiff can establish that no innocent employee was abused with false claims of criminal activity by Donna Tadd.

(Pl. Resp. Br. at 9; *see also* Pl. Resp. ¶¶ 131 ("Donna Tadd did not treat anyone of any other national origin like she treated Plaintiff."), 135 (alleging Susan Dozier never yelled at anyone else), 147 ("Non-Indian employees were not placed on administrative leave based on false charges.").)

Markose has failed to specifically identify a single person at IDHS who was treated differently from her, let alone identify a comparator who is similarly situated to her. "Identifying similarly situated employees is an essential piece of the prima facie case." *Kriescher v. Fox Hills Golf Resort and Conference Ctr.*, 384 F.3d 912, 916 (7th Cir. 2004). "A similarly situated employee is one who is 'directly comparable to the plaintiff in all material respects.'" *Rogers v. City of Chicago*, 320 F.3d 748, 755 (7th Cir.) (quoting *Grayson v. O'Neill*, 308 F.3d 808, 819 (7th Cir. 2002)) (alteration omitted); *accord, e.g., Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618-19 (7th Cir. 2000) (showing substantial similarity of comparator "normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them."). The Seventh Circuit instructs that a plaintiff may not simply rely on her assertion that "no one else" was treated the same way. In *Rogers v. City of Chicago*, the Seventh Circuit affirmed a district court's grant of summary judgment on a retaliation claim where a plaintiff had offered evidence that "no other officer" in her district was subjected to the same treatment that she was. 320 F.3d at 755. *Rogers* held that the plaintiff's assertion "does not help [the plaintiff] because, even if it were true, she does not

22

cite evidence demonstrating that any of the officer officers within the 24th district were directly comparable to her in all material respects." *Id.* Similarly, Markose's statement that no other employee was treated the same way that she was treated does not demonstrate that any of those employees were comparable to her. Thus, for the alternate and independent reason that Markose has failed to put forth any similarly situated employee who was treated better than her, Defendant is entitled to summary judgment on her claims of retaliation and discrimination based on national origin.

II.    Hostile Work Environment

Defendant argues that Markose has failed to adduce evidence sufficient to create a triable material issue concerning her hostile workplace claim. Accordingly, the IDHS argues that summary judgment is appropriate on the claim. Markose does not argue to the contrary. As explained below, the Court agrees that dismissal of this claim on summary judgment is appropriate.

Markose alleged that Dozier and Tadd created a hostile work environment through their words and actions, in violation of Title VII. To survive a summary-judgment motion, an employee alleging harassment based on a protected ground must show: (1) she was subject to unwelcome harassment; (2) the harassment was based on her national origin; (3) the harassment was severe or pervasive so as to alter the conditions of the employee's work environment by creating a hostile or abusive situation; and (4) there is a basis for employer liability. *See Williams v. Waste Mgmt. of Ill.*, 361 F.3d 1021, 1029 (7th Cir. 2004). Plaintiff's claim fails because her combined allegations are not so severe or pervasive as to create a hostile work environment.

23

In determining whether an environment is objectively hostile or abusive, the Court looks to the totality of the circumstances, "including but not limited to the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Mosher v. Dollar Tree Stores, Inc.*, 240 F.3d 662, 668 (7th Cir. 2001) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)). As the Court has already described above, Markose has failed to demonstrate that the alleged events and actions by Tadd and Markose materially and adversely altered her work conditions. Similarly, given the infrequent nature of the actions, Markose has failed to establish that the actions were pervasive. She identifies limited incidents over a 2-year period. None of the actions were physically threatening to her in any way, nor does she present evidence that the actions interfered with her work performance. While the Court does not condone the alleged derogatory comment by Dozier, it was (if the allegation is true) a mere offensive utterance within the meaning of Title VII precedent rather than an incident giving rise to an actionable hostile work environment. *See McPhaul v. Bd. of Comm'rs of Madison County*, 226 F.3d 558, 567 (7th Cir. 2000) ("Thus, the 'mere utterance of an . . . epithet which engenders offensive feelings in an employee' is not sufficient to establish a hostile working environment.") (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)) (alteration in original). In sum, Markose has failed to present evidence of an abusive work environment, and summary judgment is proper on Markose's hostile work environment claim.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is granted.

So ordered.

Mark Filip
United States District Judge
Northern District of Illinois

Date: January 28, 2005